All right, let's turn to our second argument, which is 20-8032 United States v. Harris. You may proceed. Thank you, Andrew Parnes. May I please court Andrew Parnes on behalf of Mr. Harris? I'm actually sitting in Ketchum, Idaho. In this case, the government knew that they could not obtain a felony conviction under the federal statute for Mr. Harris because he had no intent to do bodily harm. The facts of this case show there was a brief argument. He left the camp, came back, and apologized almost immediately for his behavior. But the government did not want to charge him with simple assault as a misdemeanor. However, his ultimate sentence really wound up with probation, a fine, and 120 hours of community service, very much like a simple crimes act. Bars charging him with a portion of the Wyoming aggravated assault statute that criminalizes a threatening another with a drawn gun without an intent to harm, but with an intent that the person feel threatened. Under Lewis, as the Ninth Circuit has held now in two cases, assault cases, the ACA should not be applied in this case. First, under Lewis, the statute is comprehensive. While Lewis said that the assault statute might be less comprehensive than the murder statutes that were subject in Lewis, there's no question that this assault is comprehensive. There's a substantial difference in the requirement between simple assault under the federal statute and then the Wyoming statute, which really is precisely applicable to the facts here. You really have kind of a neat fit and you can understand why the government turns to that, but under the Supreme Court's guidance, shouldn't that difference? I mean, we have to see if it's substantial enough difference to make the assimilative crimes act apply. Why isn't that a pretty big difference here? And it more precisely tailors the defendant's conduct to the applicable law. Well, the reason that it is not really a substantial difference, first of all, this is not a situation in Johnson where the court was looking at a situation where there was no intent requirement at all, and that a number of states have looked at a situation where assault with a deadly weapon requires it's just a general intent crime. That's not the situation here. The situation here, it's very, very close. I've actually struggled with trying to figure out the difference. I think the instruction is that there was that Mr. Harris had to have an intent to make the people feel threatened, even though he wasn't going to carry out that intent. That is, in my mind, not very substantial difference. But when you go back to Lewis, Lewis basically says, if Congress has defined a statute, we're not going to assimilate a state crime that approximately prohibits the same conduct. And that's really what's happened here, that this is essentially similar conduct. There may be a slight, there is a slight difference in the scienter requirement, but just the fact that there's a different element or a slightly different element doesn't affect the Assimilated Crimes Act, because number one, the assault statute is comprehensive, which shows that there is an intent to occupy this field. And that's what the Ninth Circuit held. Secondly, what's happening is that the state statute would be allowed to rewrite the criminal statute, the assault statute, by saying, we're not, we're going to take what would otherwise be a simple assault under the federal statute, because there is no showing of an intent to do harm. And we're going to allow them to elevate that to a felony offense, rewriting, apply the eight subsections in 113 that Congress has passed, has renewed over decades. They have not adopted what certain states have done. Certain states have said that this action would be a felony. Other states have said similar actions would be a misdemeanor. The federal Congress has these types of acts would be a misdemeanor unless you can show an intent to do bodily harm. Let me ask you this. Lewis has this language about assault in it. And I recognize they weren't dealing with assault, they were dealing with murder. And so it's dicta. But we give, we follow their dicta as much as we follow their precedent. And so I'm trying to figure out what they're hinting at, what they're trying to tell us here by the statement. And without expressing any view on the merits of the lower court cases that have assimilated state child abuse statutes, despite the presence of the federal assault law, we note that the federal assault prohibition is less comprehensive than the federal murder statute. And the relevant statutory relationships are less direct than those at issue here. How do you interpret that? I look at the question of comprehensive. And is comprehensive something that is, if you're not fully comprehensive, are you not comprehensive at all? It's kind of like the old grammatical thing of unique. If it's unique, there's no possibility that can't be possibly unique. But I think comprehensive is not like unique. And what the court was saying is, we don't have the assault statutes in front of us. The Supreme Court was saying we have the murder statute. That seems more comprehensive. But when you look at the decision in Lewis, what the court decided was, yes, the state elevated from second degree murder to first degree murder in a way that the federal statutes did not. And that was not sufficient in and of itself. It may not be the most comprehensive, but it is comprehensive enough to require that the court then look at the other factors. And the factor here is that the state statute would be rewriting the federal statute, which is what the Ninth Circuit has found in two cases. The second thing is that we're really looking at approximately the same conduct. And that's what the court in Lewis was concerned with. If you're not looking at identical- We're looking at the same conduct, aren't we? Because if it doesn't fit into one place in assault, then it falls into simple assault. So Congress has made the decision to brandishing a weapon without intent to do bodily harm. It's a simple assault, right? That's correct. And to permit a state statute to override that, to interfere that, would basically be rewriting the state law. It's the same conduct. There is just a slight, scienter difference. And that's what the state says. That is a gap. And I don't see that as a substantial gap. Because you could think of a number of situations where there'd be a slight difference in how the state defined the offense. And that would allow the states to have exactly what Lewis didn't want, to have 50 different versions of this. And so, in fact, as the state acknowledges, as the government acknowledges, several states say this identical act should be a misdemeanor. So this occurred in Yosemite instead of in Yellowstone. It would have been a misdemeanor. Because the state statute only... The Supreme Court also looked at the murder statute and said it covers a huge range of possible penalties, including the death penalty. And when Congress is dealing with the death penalty, we know they're focused and paying attention. And we really shouldn't be letting the state come in and interfere with that framework. We don't have that here, right? Well, we have a range of misdemeanor all the way up to, I think it's a 20-year sentence, maximum sentence, for the most serious assault under the statute. And so that's a fairly significant range. It's not identical to the murder statutes. But I think that what it shows is that they have covered the field. They've covered the gamut. And to allow just every state to have a little difference, especially when it's the same conduct in this case, that is inappropriate under Lewis. And the state, excuse me, the government says in essence that they want to create a circuit split here between the Ninth Circuit and the Tenth Circuit. Yet it doesn't give a firm reason as to why that such a split would be warranted. It just says, well, it's not comprehensive. They show little differences. I mean, in the Doe case, which was decided three weeks ago, there was a difference in the scienter, but the acts were the same. And the Ninth Circuit said, look, that's not enough. Punishment, the difference in punishment to make this a felony rather than a misdemeanor, it's not enough to warrant a simulative crimes act. And the Supreme Court in Lewis said the same thing. Punishment is not enough to warrant the application. Could Mr. Harris have been charged under 113 subpart three, assault with a dangerous weapon with intent to do bodily harm? Well, I think it's possible that he could have been charged with that. In this particular case, the government said they could not prove that. And so they decided not to charge him with that. And so the reason that they came up with this assimilative Wyoming statutes, because they said we can't prove it. And I trust the government in terms of the ethical responsibility of not bringing charges that they can't prove. And that's what they did in this case. But basically his Mr. Harris's conduct was a simple assault. And that's what he should have been charged with. And if the jury found did rejected his self-defense argument, then he would be guilty of a simple assault. Um, I'm prepared. I would like to reserve the rest of my time for rebuttal unless the court has specific questions for me at this point. Thank you, counsel. Let's hear from the government. Your honor, thank you. May it please the court and counsel. My name is Thomas Schott. I'm an AUSA in Cheyenne, and I was a trial counsel in this case as well. Your honors, I'd like to begin with Judge Timkovich's questions implicating Section 113 A3 and to emphasize that the additional intent to do bodily harm requirement in 113 A3 is very significant. Your honor, I disagree with... There was a threat here. Why wouldn't that apply? Why wouldn't that potentially apply? Well, Judge Timkovich, the reason that it didn't apply in this case, and I think candidly, would be unlikely to apply in any threat case with a firearm, is because the, um... First of all, I don't believe Mr. Harris, at least in the time frame and the way events transpired, I don't believe he had intent to do bodily harm. Counsel, let me ask you on that. He put the gun down. He said, I'm going to get a knife and come back. So just because somebody says, I'm sorry, you're going to say that that's sufficient to take away any intent? That was a jury question. You could have gone to trial on that issue without any trouble at all, and there probably would have been a lesser included offense that the jury might have come back with. Potentially, Judge Kelly, and let me say this. I don't know what was in Mr. Harris's head at the time that he had that handgun pointed... Everybody's going to say they're sorry. Oh, I didn't mean it. But get serious. This is a potentially dangerous case, and you gave up on it. Well, Your Honor, I certainly agree it was a potentially dangerous case, and the danger that's involved when threatening someone with a drawn deadly weapon is part of the reason, or maybe I can say the reason, that in the government's view, the Wyoming assimilated felony provision was appropriate, whereas the federal simple assault was not. But Congress... It was your decision, and Congress has made specific conclusions on what they want the statute to cover and what the penalty should be. And just because you want to think, well, this is easier to do it than try to prove the hardest part, you're going to assimilate a statute that doesn't require the intent. Yeah, I mean, this is a case where Congress specifically considered this crime, assault with a deadly weapon, and Congress made the decision to parse it out in terms of penalty based on whether you did or did not have the intent to do bodily harm. And you're saying we can ignore that and say, ah, we don't like that policy decision, Congress, so we're going to go with the Wyoming statute because we like the penalty attached better. I don't think that's what Lewis tells us we can do. Well, Your Honor, there's a lot there, and I'd like to address Lewis as well. But to answer your question and to follow up on Judge Kelly's question, Your Honor, the offense of the 113A3 offense, assault with a dangerous weapon with intent to do bodily harm, is categorically and characteristically different from a mere threat with a drawn deadly weapon. And threat with a drawn deadly weapon is covered in 113A5 because just like the murder statute, where if it's not first degree, it's second degree, here, if it doesn't fall into one of these other categories, it's simple assault. And I think Congress is smart enough to know that when it says assault with a deadly weapon is only a felony if you have intent to do bodily harm, that they understand that if it's not picked up there, it falls in simple assault. I mean, there is no assault, a crime that qualifies as assault, that doesn't fall within this sentencing scheme that's set out in 113. Well, Your Honor, I agree at least that this conduct would be punishable as simple assault. That is Lewis step one. That's not Lewis step two. When we get to Lewis step two, we need to look at the various considerations the court articulated there. And Your Honor, you mentioned the death penalty consideration. But if you go back and look at the court's decision in Lewis, when the court began its analysis of step two, the court actually conceded a point the government made. And I'll quote from it because it's important, briefly. Quote, we can see that the outset, the government's claim that the two statutes cover different forms of behavior. The federal second degree murder statute covers a wide range of conduct. The Louisiana first degree murder provision focuses upon a narrower and different range of conduct. We also concede that other things being equal, this consideration argues in favor of assimilation. So end quote. So the default for this sort of scenario, at least based on the court's language in Lewis, is that assimilation is proper. And then the court went on to consider the various specific features of the federal murder statute that changed that default, including the comprehensive manner in which the statute was written, Congress's repeated focus on what eligible. The court also talked about the legislative history. And the court did also talk about subjecting residents to various or to different sorts of territorial laws, which is sort of a nuanced point that would take a little time to explain and give my thoughts on. But your honor, the material point is, and Judge McHugh, as you also point out, Lewis specifically, the court said that the federal assault statute is less comprehensive. They specifically set forth that all else being equal, assimilating that Louisiana murder statute would have been proper, but it's only the specific details of the murder statute that changed that. Well, those considerations are not present here. Obviously, assault is not death penalty eligible. There's nothing to suggest, your honor, that Congress has actually sat down and focused on this fact scenario, has sat down and decided that simple assault is sufficient for this fact scenario. There's nothing as opposed to the murder statute that indicates that Congress has made a careful, careful decision and actually decided that a threat with a drawn deadly weapon should be punished a simple assault. So that distinguishes Lewis. I guess, I mean, from the face of this I obviously thought about assault with a dangerous weapon because they said we're going to punish it as a felony only if you have intent to do bodily harm. They could have just left out with intent to do bodily harm, but they didn't. That seems to me to be a conscious choice about how Congress wanted. I don't see a gap with respect to this crime, which is assault with a deadly weapon. You know, and in Lewis, when they're talking about, you know, we're not saying anything about assault, they're talking about a specific thing. They're talking about the assault of a child. And, you know, that's a different crime, a different type of crime, significantly different. You're pointing to the penalty and saying that it's significantly different based on the mens rea, which it is, but Congress, it looks to me, thought about the mens rea. So that's where I'm having trouble. Well, Judge McHugh, what I would say is that the Wyoming threatened with a drawn deadly weapon statute does not differ from simple assault simply insofar as the punishment. The Wyoming offense has the additional element of it being a drawn deadly weapon. Simple assault embraces a wide range of assaultive conduct, including conduct much more innocuous than threatening someone with a drawn deadly weapon. Because it also includes threatening someone with a drawn, pulling a drawn, brandishing a firearm. It's covered in simple assault. This crime is covered in simple assault if you don't choose to try and prove the mens rea element. Your Honor, I agree that it's covered. I would again say that that certainly takes us past Lewis step one. But the fact that the Wyoming statute is much more targeted and specific takes us in Lewis step two, at least in the language of the court in Lewis, to a situation where that argues in favor of assimilation. So that would be that would be my point on that. Now, I'd like to return your honor to a point really now that all three members of the panel have raised, and that's the the mens rea under 113 a three and whether the Wyoming statute is very similar to it. Your honors, I again, I disagree. I would disagree with that premise on just to think about the proof at trial and the jury arguments. Take this case or take a similar case where someone drew a handgun and then for a period of time held the handgun pointed at a victim making threats but not pulling the trigger, not firing the handgun. The defense argument to the jury would be compelling. Ladies and gentlemen, if my client had intended to do bodily harm, he would have pulled the trigger. He did not intend to do bodily harm. Therefore, all he did was hold the gun and talk. So your honors, as certainly as a prosecutor and as a as a factual matter, as a matter of proof in front of a jury, that is a significant distinction as a practical matter. In terms of proving the case, 113 a three in a gun case would seem to basically require that the that the defendant fired the gun at the victim. Because if not, the defense argument again would be compelling. Well, he didn't intend any bodily harm because he never fired it or he didn't intend any bodily harm because he just fired it in the air. He was trying to intimidate. He was trying to threaten. He wasn't trying to do bodily harm. And your honor, just how many how many juries would buy that story? That is ridiculous. Oh, he didn't mean it. The defense lawyer says he didn't mean it. He just pulled the gun out just for the heck of it. That is not going to fly nine out of 10 times. Well, you just didn't want to take a chance on. Well, your honor, two responses to that. Again, the premise there is that the only time someone points a gun at someone is when they intend to fire it or hurt them. And I simply disagree with the premise. It seems to me that there are many scenarios where someone would, without justification, point a gun at someone without intending to fire it. And for for me to stand in front of a jury on that, I think somebody pulls a gun out. Everybody thinks they're going to get shot. And it's up to the prosecution to put the case on if that's what they think the situation was. And if a person says, oh, I didn't really mean it. I said I was going to get a knife and come back and get him. You know, the intent is there. Well, just a matter of how good a lawyer the prosecutor was to prove it. Well, and your honor, perhaps in this case, the prosecutor is not a good lawyer. And fortunately, that's not before this court, I hope. But the bottom line is, I simply disagree with the premise, because the premise would be that every time someone points a gun at someone, he intends to fire it and intends to do bodily harm. Well, accepting your premise, okay, and accepting that in this case, it was a reasonable decision not to try to prove intent to cause bodily harm. I still don't understand why you get to get the higher penalty in Wyoming, when Congress has a scheme that if you can't prove intent, then you fall into simple assault, even if you've brandished a dangerous weapon. I mean, Congress made a policy choice here, didn't it? It looked at where do we put it? And it said, we're going to make it a special category with higher penalties, if you meet the mens rea requirement. Otherwise, it falls in with all other simple assaults. I mean, Congress could have made a different decision. And maybe they should have. But they didn't. And that's, to me, I just don't see a gap here. Well, your honor, again, the gap from the government's perspective is that that 113A3 offense is, as a proof matter, it means trying to hurt someone with a deadly weapon. And Judge Kelly may be right, and I may be wrong. But that's the government's position, that that 113A3 offense is characteristically different from the assimilated offense. So there's the gap. And again... Well, it is different, because it has a mens rea requirement. But what I'm saying is, the crime here, assault with a deadly weapon, was on the radar of Congress. And they looked at it, and they said, in 113, they're not defining assault, they're just saying, how do you punish it? And on three, they say, you know what, we're thinking about assault with a deadly weapon. If you've got the mens rea, we're going to punish it as a felony. If you don't have the mens rea, it's going to fall in simple assault. I mean, I'm having a hard time. This is not like where you have an entirely different crime that slipped through the cracks. I don't see anything slip through the cracks here. Go ahead and respond. Your honor, thank you. Judge McHugh, I would just say again, well, two things quickly. First, the fact of it being assault versus non-assault, a different crime, that would be relevant under Justice Scalia's opinion in Lewis, but at least not controlling under the majority opinion. I would still say, your honor, that the specific nature of the Wyoming statute, under the court's analysis in Lewis, makes assimilation the ways in favor of assimilation. Thank you, your honors. Well, do you think Lewis abrogated our judgment? Judge Timkovich, it certainly abrogated the reasoning by which this court reached its conclusion. I would agree with the district court in New Mexico that the holding in Johnson is consistent with the Lewis analysis, for the reasons I've articulated. Thank you. All right, Mr. Pardish, you had some rebuttal time. Yes, your honors. A little to add, I think that the court really can write a narrow decision based on the allegations in this case. I think, as Judge McHugh has said, Congress knew what it was doing when it wrote the statute. It's been on the books for decades. It's been on the books while other states, as the government has acknowledged, some states treat this act as a felony, some states treat it as a misdemeanor. Congress has without the intent element as a misdemeanor, and that's what was all that was shown, and therefore this court should reverse and impose the misdemeanor judgment. That's what we have asked for. If the court has no other questions, I'm prepared to submit. Counsel, we appreciate the arguments on cases submitted, and you are excused.